UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VIDAL MAURICE WHITLEY,

                        Plaintiff,
                                                                        9:25-CV-0896
   v.                                                                      (ECC/PJE)

DANIELLE DILL,

                        Defendant.
_____

APPEARANCES:

VIDAL MAURICE WHITLEY
2593602105
Plaintiff, pro se
Monroe County Jail
130 Plymouth Ave. South
Rochester, NY 14614

ELIZABETH C. COOMBE
United States District Judge

**DECISION and ORDER**

**I.     INTRODUCTION**

       Pro se plaintiff Vidal Maurice Whitley commenced this action in the Western District of New York by filing a complaint asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with application to proceed in forma pauperis ("IFP"). *See* Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application"). By Decision and Order entered on July 9, 2025,

1

the Honorable Elizabeth A. Wolford granted the IFP Application, dismissed certain of plaintiff's claims, and severed and transferred plaintiff's claims against defendant Danielle Dill arising from his confinement at the Central New York Psychiatric Center ("CNYPC") to the Northern District of New York pursuant to Fed. R. Civ. P. 21 and 28 U.S.C. § 1404(a).  Dkt. No. 6 ("Initial Screening Order").

## II.   DISCUSSION

The legal standard governing review of a pleading pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the Initial Screening Order and it will not be restated in this Decision and Order.  *See* Initial Screening Order at 2-3.

### A.   Summary of the N.D.N.Y. Allegations in the Complaint

With respect to the claim(s) before this Court, the complaint asserts allegations of wrongdoing related to plaintiff's confinement at CNYPC following his transfer there from Elmira Correctional Facility.  *See generally* Compl.  Although the pleading is far from a model of clarity, the following facts are set forth as alleged by plaintiff in his complaint.

Plaintiff was arrested by Rochester City Police on June 16, 2023.  Compl. at 16, 20. At some point thereafter, plaintiff was "kidnap[ped] . . . [and] illegally detain[ed]" at Attica and Elmira Correctional Facilities.  *Id*. at 18.

While at Elmira Correctional Facility, Plaintiff was "beaten all over [his] back [and] head with steel toe boots" by a corrections official.  Compl. at 19.  Plaintiff attempted to file

grievances regarding the matter and was subsequently sent to CNYPC for an examination pursuant to N.Y. Crim. Proc. Law § 730.00.  *Id*. at 22.

While at CNYPC, plaintiff spoke with defendant Executive Director Dill and informed her that he was being illegally detained.  Compl. at 22.  Plaintiff "showed her [and] the treatment team how [he] was a[] victim of malicious prosecution," and "Dill still chose to act in concert with . . . [the] people violating [his] person then out of retaliation[.]"  *Id*.  Plaintiff was moved to a unit at the Psychiatric Center "for convicted felons," where they did not "even do 730 examinations," and "was savagely gang assaulted . . . by [three] inmates with mental illnesses."  *Id*.  Plaintiff sustained two chipped teeth, and a cut on his right eye.  *Id*.  Plaintiff alleges that Dill "hid these things."  *Id*. at 22-23.

Plaintiff was returned to the Monroe County Jail after he "passed the 730 exam[.]"  Compl. at 23.

Liberally construed, the complaint asserts a First Amendment retaliation claim, an Eighth Amendment failure-to-protect claim, and a supervisory liability claim against defendant Dill in her individual and official capacities.

Plaintiff seeks money damages and the resignation of each defendant "found guilty."  Compl. at 10.  For a more complete statement of plaintiff's claims, reference is made to the complaint.

**B.     Analysis**

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution

and laws' of the United States."  *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); see also *Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)).  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'"  *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

The Second Circuit, however, recently made clear that "there is no special rule for supervisory liability."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  Instead, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

4

### 1. Official Capacity Claims

As noted in the Initial Screening Order with respect to plaintiff's official capacity claims asserted against the defendants other than defendant Dill, official capacity claims asserted against state employees are barred by the Eleventh Amendment.  *See* Initial Screening Order at 16-17.  Accordingly, insofar as plaintiff has brought Section 1983 claims against defendant Dill in her official capacity, those claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment, and for failure to state a claim upon which relief may be granted.  *See, e.g., Brooks v. Hogan*, No. 9:15-CV-0090 (BKS/TWD), 2016 WL 11662110, at *3 (N.D.N.Y. Feb. 24, 2016) ("[I]nsofar as plaintiff seeks an award of money damages pursuant to Section 1983 against the OMH and CNYPC defendants in their official capacities, ... those claims are barred by the Eleventh Amendment and are hereby dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)."); *Harvey v. Sawyer*, No. 09-CV-598 (FJS/DRH), 2010 WL 3323665, at *10 (N.D.N.Y. July 22, 2010) (noting that psychiatric centers such as CNYPC "have also been deemed arms of the state and protected by the Eleventh Amendment" and granting motion to dismiss Section 1983 claims against "CNYPC and all individual defendants to the extent sued in their official capacities"), *report and recommendation adopted by* 2010 WL 3323669 (N.D.N.Y. Aug. 20, 2010); *Aiken v. Nixon*, 236 F. Supp. 2d 211, 226-27 (N.D.N.Y.2002) (McAvoy, J.), *aff'd*, 80 Fed. Appx. 146 (2d Cir. Nov. 10, 2003) (dismissing "all claims for monetary damages against [Capital District Psychiatric Center] and the individual defendants in their official capacities....").

### 2. Retaliation Claim

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492).  "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

"To be an 'adverse action,' retaliatory conduct must be the type that would deter 'a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Hayes v. Dahlke*, 976 F.3d 259, 274 (2d Cir. 2020) (quoting *Davis*, 320 F.3d at 353)).

Liberally construed, the allegations in the complaint suggest that plaintiff expressed a belief to defendant Dill that he was being illegally confined, and instead of addressing the issue, this official moved him to a unit at the Psychiatric Center "for convicted felons," where he "was savagely gang assaulted . . . by [three] inmates with mental illnesses." Compl. at 22.

6

As an initial matter, the complaint does not include any allegations which plausibly suggest that defendant Dill knew, before directing plaintiff's relocation to another area of CNYPC, that doing so exposed him to a risk of harm. Moreover, relocating plaintiff from one area of CNYPC to another, without any allegations that the alleged relocation resulted in a change in access to privileges or accommodations, is not "adverse action" for purposes of a First Amendment retaliation claim. *See, e.g., Franks v. Russo*, No. 9:18-CV-1282 (GTS/TWD), 2018 WL 6674293, at *11 (N.D.N.Y. Dec. 19, 2018) ("As an initial matter, plaintiff does not allege that he had a right to remain in the facility hospital (or in general population) when he was transferred to SHU. Thus, the fact that plaintiff was transferred from the prison hospital to SHU does not, in and of itself, plausibly suggest that plaintiff's placement in SHU constituted adverse action."); *Cruz v. Grosso*, No. 9:13-CV-0030 (FJS/TWD), 2014 WL 2176256, at *7 (N.D.N.Y. May 23, 2014) ("[T]he transfer of a prisoner is not considered an 'adverse action' unless it results in the prisoner being subjected to more onerous conditions."); *Warren v. Goord*, No. 99-CV-2696, 2006 WL 1582385, at *14-15 (W.D.N.Y. May 26, 2006) (dismissing retaliatory transfer claim, finding no adverse action where inmate failed to allege that conditions of his confinement upon transfer from Wende CF's long-term care medical unit to Attica CF's infirmary "significantly differed"); *aff'd by* 2008 WL 5077004 (2d Cir. 2008), *cert. denied*, 558 U.S. 1100; *cf. Brown v. Cunningham*, No. 15-CV-5093, 2017 WL 627463, at *3 (S.D.N.Y. Feb. 14, 2017) (finding plaintiff's alleged transfer was adverse because his original prison was within his area of preference and, at his new

7

prison, "he would no longer be able to participate in certain educational or reentry programs," and "his loved ones would be further away").

Furthermore, the Court has no basis to plausibly infer from plaintiff's vague and conclusory allegations that plaintiff was moved within CNYPC in response to his engagement in protected activity. *See, e.g., Osborn v. Harris*, No. 9:20-CV-0673 (TJM/ATB), 2020 WL 13801099, at *8 (N.D.N.Y. Aug. 3, 2020) ("Plaintiff alleges that Carollo directed a deputy to issue a misbehavior report on May 5, 2020 in retaliation for 'expressing his religious rights.' . . . Plaintiff's conclusory allegations regarding Defendant's motives for the alleged retaliatory conduct are insufficient to plausibly suggest that Carollo knew about any prior complaints at the time of the alleged retaliatory conduct."); *Dozier v. Chapman*, No. 9:05-CV-0127 (NAM/RFT), 2009 WL 3055271, at *1, *7 (N.D.N.Y. Sept. 21, 2009) ("Plaintiff also alleges that Powers approved him for mess-hall duty in retaliation for the aforementioned Grievances Plaintiff filed against Chapman, but there is no allegation as to why Powers would be motivated to retaliate against Plaintiff for grievances he filed against another official[, and] ... [t]hus, Plaintiff has failed to plead a plausible causal connection between the alleged protected act, filing grievances against Chapman, and Powers' alleged adverse action of approving him to work in the mess-hall").

Accordingly, plaintiff's retaliation claim against defendant Dill is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 3. Failure-to-Protect Claim

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

"The Eighth Amendment [also] requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dept. of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Prison officials may be held liable under Section 1983 for failing to protect an inmate from conditions posing a substantial risk of serious harm. *See Farmer*, 511 U.S. at 836.

In order to establish a "failure to protect," the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, and prison officials acted with deliberate indifference to that risk and the inmate's safety. *Farmer*, 511 U.S. at 836. Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

9

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

"One way to make out such a claim is to allege that 'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant official being sued had been exposed to information concerning the risk and thus must have known about it.'" *Coronado v. Goord*, No. 99-CV-1674, 2000 WL 1372834, at *4 (S.D.N.Y. Sept. 25, 2000) (quoting *Farmer*, 511 U.S. at 842-43); *see also Hayes*, 84 F.3d at 620-21 (prisoner's repeated expressions of fear following an inmate attack and requests for transfer as a safety measure raised a question of fact). "Courts have [also] found that a prisoner validly states an Eighth Amendment claim based on a failure to protect when he alleges that he informed corrections officers about a specific fear of assault and is then assaulted." *Davis v. Torres*, No. 10-CV-2236, 2012 WL 3070092, at *5 (S.D.N.Y. May 2, 2012), *report and recommendation adopted by* 2012 WL 3070083 (S.D.N.Y. July 27, 2012); *see also Beckles v. Bennett*, No. 05-CV-2000, 2008 WL 821827, at *17 (S.D.N.Y. Mar. 26, 2008) (denying summary judgment where plaintiff presented evidence that he informed sergeant of correction officers' threatening behavior and was later assaulted by those officers).

"On the other hand, an inmate's communications about 'generalized safety concerns' or 'vague concerns of future assault by unknown individuals' are insufficient to provide knowledge that the inmate is subject to a substantial risk of serious harm." *Stephens v. Venettozzi*, No. 13-CV-5779, 2016 WL 929268, at *19 (S.D.N.Y. Feb. 24, 2016) (quoting *Ross*

*v. City of New York*, No. 12-CV-8545, 2014 WL 3844783, at *8 (S.D.N.Y. 2014), *rev'd on other grounds*, No. 14-3327 (2d Cir. July 20, 2015) (summary order)), *report and recommendation adopted sub nom. Stephens v. Venetozzi*, 2016 WL 1047388 (S.D.N.Y. Mar. 10, 2016). "Neither mere negligence nor a prison guard's mere failure to act reasonably is enough to state an Eighth Amendment deliberate indifference claim."  *Sawyer v. New York State Dept. of Corr. Servs.*, No. 11-CV-0152, 2015 WL 6644112, at *7 (W.D.N.Y. June 30, 2015) (citing *Garcia v. Witkowski*, 988 F. Supp. 2d 360, 361 (W.D.N.Y. 2013)), *report and recommendation adopted in pertinent part by* 2015 WL 6641471 (W.D.N.Y. Oct. 28, 2015); *Shell v. Brun*, 585 F. Supp. 2d 465, 469-70 (W.D.N.Y. 2008) ("In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety. Mere negligence (for example if a prison guard should know of a risk but does not) is not enough . . . .").

In this case, the complaint does not include any allegations which plausibly suggest that defendant Dill knowingly transferred plaintiff to an area within CNYPC that was likely to pose a risk of harm to him.  Furthermore, it is entirely unclear from the allegations in the complaint (1) how soon plaintiff was assaulted by other inmates following his relocation within CNYPC, (2) where plaintiff was assaulted, (3) the events that precipitated the assault, (4) whether the assault involved any individuals with whom plaintiff had a negative history, or (5) how, if at all, the assault may have been foreseeable.  Thus, the complaint is devoid of allegations which plausibly suggest either that defendant Dill was personally involved in creating the environment that resulted in the alleged harm that plaintiff suffered while

confined at CNYPC, or that she acted with deliberate indifference to plaintiff's well-being in relocating him within the facility.

Accordingly, plaintiff's failure-to-protect claim against defendant Dill is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.[1]

### 4. Supervisory Liability Claim

As noted, the complaint is far from a model of clarity. However, it appears that plaintiff also seeks to hold defendant Dill responsible for his alleged unlawful confinement because he allegedly raised the issue with her, and she "still chose to act in concert with . . . [the] people violating [his] person then out of retaliation." *See* Compl. at 22. Insofar as this is correct, the Initial Screening Order dismissed plaintiff's false arrest and false imprisonment claims (as well as his conspiracy claims),[2] and the law is well-settled that where "there [is] no

---

[1] Insofar as the complaint alleges that Dill "hid" the assault against plaintiff, *see* Compl at 22-23, it is entirely unclear what this official "hid[,]" or how she did so. Furthermore, as a general matter, "[a] claim that a prison employee has taken steps to conceal evidence of a past constitutional violation which is not ongoing does not alone state a cognizable constitutional claim under 42 U.S.C. § 1983." *De Ponceau v. Bruner*, No. 9:09-CV-0605 (GTS/DEP), 2012 WL 1030415, at *7 (N.D.N.Y. Feb. 21, 2012) (collecting cases), *report and recommendation adopted by* 2012 WL 1014821 (N.D.N.Y. Mar. 23, 2012); *Evans v. Murphy*, No. 12-CV-365, 2013 WL 2250709, at *3 (W.D.N.Y. May 22, 2013) (dismissing claim that defendant "failed to document [plaintiff's] injuries to cover-up the incident[,]" noting that "[s]uch a claim does not state a constitutional claim"); *Lewis v. Hanson*, No. 9:18-CV-0012 (LEK/DJS), 2022 WL 991729, at *25 (N.D.N.Y. Mar. 31, 2022) (holding, in light of *Tangreti*, that "an officer who attempts to cover up an assault after the fact, while potentially committing other violations, may not have personally participated in cruel and unusual punishment in the same way such that a plaintiff could establish the elements of an excessive force claim against them directly"). Thus, these conclusory allegations also do not give rise to a cognizable Eighth Amendment claim.

[2] *See* Initial Screening Order at 20-21, 43-44.

underlying constitutional violation, there is also no supervisory liability." *Raspardo v. Carlone*, 770 F.3d 97, 129 (2d Cir. 2014).

In addition, a claim that defendant Dill failed to remedy plaintiff's alleged unlawful confinement is based entirely on the premise that plaintiff should not have been confined in the first place. As noted in the Initial Screening Order, a false arrest or false imprisonment claim would appear to be barred by the Supreme Court's Decision in *Heck v. Humphrey*, 512 U.S. 477 (1994). *See* Initial Screening Order at 20-21.[3]

Finally, the Court has no basis to plausibly infer from the allegations in the complaint that defendant Dill, as the Executive Director of CNYPC, has any authority to take steps that may result in a change in plaintiff's incarceration status. In other words, setting aside the apparent lack of merit to plaintiff's underlying false arrest and false imprisonment claims, defendant Dill is not a proper defendant with respect to those claims. *See Tangreti*, 983 F.3d at 619 n.7 (noting that where the defendant prison official "was not responsible for procuring cameras or for [the correctional facility's] camera policy[,] [t]he district court correctly concluded that apart from discussing this problem with other officials, [the defendant] had no

---

[3] In *Heck*, the United States Supreme Court held that a Section 1983 plaintiff cannot recover damages "for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless that plaintiff is able to "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." 512 U.S. at 486-87. "*Heck* uses the word 'sentence' interchangeably with . . . 'continuing confinement' and 'imprisonment,'" and thus, any shortening of a term of confinement will be subject to the rule in *Heck*. *Wilkinson v. Dotson*, 544 U.S. 74, 83-84 (2005) (quoting *Heck*, 512 U.S. at 483, 486) (other citation omitted). Indeed, an inmate's Section 1983 action is barred by *Heck* "(absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit . . . if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson*, 544 U.S. at 81-82.

13

further responsibility to resolve it"); *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 317 (S.D.N.Y. 2008) ("Finkle, as Executive Director of the CCRB, did not have the authority to take action with respect to any constitutional violation plaintiffs may have suffered from their confrontation with Officers Melendez and Jaikissoon. It necessarily follows that the allegations are insufficient to plead the personal involvement of Finkle in any alleged constitutional violation against plaintiffs." (collecting cases)).

In light of the foregoing, plaintiff's supervisory liability claim against defendant Dill related to his alleged wrongful confinement is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### D. Dismissal with Leave to Amend

The Second Circuit has held that a district court "should not dismiss [a pro se plaintiff's complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (internal quotation omitted). Although the complaint does not necessarily indicate that plaintiff might be able to state a valid claim against defendant Dill, the Court will nonetheless give him an opportunity to present a proposed amended complaint with respect to the claims dismissed herein without prejudice based on alleged wrongdoing arising out of plaintiff's confinement at CNYPC during the time period discussed in the complaint.

In any amended complaint that plaintiff submits in response to this Decision and Order, he must set forth a short and plain statement of the facts on which he relies to support his claim that any individual named as a defendant was a state actor who engaged in misconduct or wrongdoing that violated his constitutional rights. Plaintiff is advised that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference.

Plaintiff is forewarned that, if he fails to submit an amended complaint within thirty (30) days of the filing date of this Decision and Order, the Court will, without further order, dismiss the portion of this action that remains in this District without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## IV.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's Section 1983 official capacity claims against defendant Dill are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment, and for failure to state a claim upon which relief may be granted;[4] and it is further

---

[4] Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011). Because these claims are barred by the Eleventh Amendment, leave to amend to would be futile.

**ORDERED** that plaintiff's individual capacity claims against defendant Dill are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that if plaintiff wishes to proceed with any claims based on alleged wrongdoing arising during his confinement at CNYPC as detailed in the original complaint, he must file an amended complaint as directed above within thirty (30) days from the filing date of this Decision and Order; and it is further

**ORDERED** that, if plaintiff timely files an amended complaint, this matter be returned to the Court for further review; and it is further

**ORDERED** that if plaintiff fails to timely file an amended complaint as directed above, the Clerk shall enter judgment indicating that this action is **DISMISSED without prejudice** without further order of this Court pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.  In that event, the Clerk is directed to close this case; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.  **Plaintiff is also required to promptly**

16

**notify, in writing, the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do so may result in the dismissal of this action**; and it is further

    **ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED**.

Dated: August 11, 2025

    Syracuse, NY

Elizabeth C. Coombe
U.S. District Judge